UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITANIA SABZEROU, et al., | CASE NO. 8:23-cv-01355-JLS-JDE |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT (Doc. 43)** |
| YVES SAINT LAURENT AMERICA, INC., et al., | |
| Defendants. | |

Before the Court is an unopposed Motion for Preliminary Approval of Class Action and Private Attorneys General Act ("PAGA") Settlement filed by Plaintiff Titania Sabzerou. (Mot., Doc. 43.) Plaintiff asks the Court to (1) preliminarily approve the terms of the modified settlement agreement between Plaintiff and Defendant Yves Saint Laurent America, Inc. ("YSL"); (2) conditionally certify the proposed class for settlement purposes only; (3) name Plaintiff as Class Representative; (4) appoint Michael Robinson and Orion Robinson as Class Counsel; (5) authorize the form and manner of class notice; and (6) schedule a final fairness hearing. (*Id*. at 18–28.) Having considered the original and supplemental briefing, and for the following reasons, the Court GRANTS Plaintiff's Motion and sets a final fairness hearing for **October 24, 2025, at 10:30 a.m**.

## I.  BACKGROUND

YSL employed Plaintiff as an hourly-paid, non-exempt employee at its Costa Mesa store from April 28, 2019 until February 25, 2022. (Compl. ¶ 12, Doc. 1-3; Sabzerou Decl. ¶ 4, Doc. 43-2.) On April 27, 2023, Plaintiff filed a class action complaint in Orange County Superior Court, alleging that YSL maintained policies and practices that resulted in the following violations of California state law: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to furnish payroll records; (8) failure to furnish personnel records; (9) failure to reimburse necessary business expenses; (10) unfair competition; and (11) PAGA. (Compl. ¶¶ 61–137.) YSL removed the action to federal court on July 27, 2023, invoking federal jurisdiction under the Class Action Fairness Act ("CAFA"). [1]  (Notice of Removal "(NOR)", Doc. 1.)

Plaintiff's Counsel assert that they have conducted a thorough investigation of Plaintiff's claims. (Mot. at 8.) They interviewed over fifteen of YSL's former and current

---

[1] This case was previously assigned to the Honorable Cormac J. Carney and was transferred to this Court on May 31, 2024. (Transfer Order, Doc. 15.)

employees, including Plaintiff, to gather information regarding the alleged unlawful policies. (Robinson Decl. I ¶ 2, Doc. 43-1.) Plaintiff's Counsel also obtained a 10% blind sample of YSL's payroll and timekeeping records for the class members and engaged in extensive review of these records with the assistance of wage and hour expert James Toney. (*Id.*) The parties were guided by this data and analysis in conducting their settlement negotiations. (Robinson Decl. II ¶ 3, Doc. 56-1; Mot. at 23.)

On May 13, 2024, the parties participated in a full-day mediation before Jeffrey Winikow, a former Judge for the Los Angeles Superior Court. (Robinson Decl. I ¶ 3.) Although the parties were unable to resolve the dispute at mediation, the parties later reached an agreement to settle the case on August 1, 2024. (*Id.*)

On December 6, 2024, Plaintiff moved for preliminary approval of the Settlement Agreement. (Mot.) The Court held a hearing on January 10, 2025, and then requested supplemental information including (1) a declaration or other evidence supporting the calculation of YSL's maximum potential liability; (2) briefing addressing the Court's concerns regarding the equity of the distribution of the gross settlement amount; and (3) a proposed class notice form. (Minutes of Hearing, Doc. 51.) On March 10, 2025, the parties timely filed the following additional documents: (1) the declaration of wage and hour expert James Toney (Doc. 52-2); (2) the declaration of Jenna Cosares, who served as YSL's Senior Human Resources Manager for the West Coast Region from November 2020 through December 2023 and is currently employed by YSL (Doc. 54); (3) a proposed Class Notice Form (Doc. 52-1); and (4) a Modified Settlement Agreement (the "Settlement") (Doc. 52-3). On April 5, 2025, the Court requested further supplemental briefing regarding the violation rates assumed in calculating YSL's maximum potential liability. (Order Req. Further Supp. Br., Doc. 55.) On April 18, 2025, Plaintiff timely filed two additional declarations—one of James Toney, and the other of Michael Robinson—addressing this issue. (Robinson Decl. II, Doc. 56-1; Toney Decl. II, Doc. 59.)

3

The Settlement Class includes "all current and former nonexempt employees of [YSL] employed during the [] Class Period who did not sign an arbitration agreement or an individual release of claims."  (Settlement § I, ¶ W.)  The "Class Period" begins on April 27, 2019, and ends on the date on which the Court preliminary approves the Settlement. (*Id.* ¶ Z.)  The Settlement defines "PAGA Aggrieved Employees" as "all current and former nonexempt employees of [YSL] employed during the PAGA Period."  (*Id.* ¶ O.) The "PAGA Period" begins on April 27, 2022, and ends on the date on which the Court preliminary approves the Settlement.  (*Id.* ¶ R.)  Plaintiff's Counsel estimate that there are approximately 124 Class Members and 244 PAGA Aggrieved Employees.  (Robinson Decl. I ¶ 6; Mot. at 9.)

The Settlement provides for a non-reversionary gross settlement amount of $250,000.  (Settlement §§ III.A, ¶ 1 and I, ¶ D.)  The gross settlement amount will be allocated as follows:

- $50,000 allocated to PAGA penalties, with $37,500 being paid to the California Labor & Workforce Development Agency and $12,500 remaining for *pro rata* distribution to the PAGA Aggrieved Employees (*id.* § III.B, ¶ 3);

- Up to $10,000 allocated to Plaintiff as an enhancement for serving as Class Representative (*id.* ¶ 1);

- Up to $6,500 allocated to settlement administration costs (*id.* ¶ 4);

- Up to one-third of the gross settlement amount, or $83,333.33, allocated to attorneys' fees for Class Counsel (*id.* ¶ 2); and

- An amount approved by the Court for documented costs to Class Counsel (*id.* ¶ 2).

The remaining sum of approximately $84,332.14 will comprise the net settlement fund, to be distributed to Class Members.  (*Id.* § I, ¶ D; Robinson Decl. I ¶ 5.)  The parties agree that 80% of the amount payable to each class member from the net settlement fund

will be allocated to penalties, while the remaining 20% will be allocated to wages. (Settlement § III.B, ¶ 5.)  Each class member's share of the net settlement fund will be proportional to the number of workweeks that the class member worked for YSL during the Class Period.  (*Id*.)  YSL represents that its employment records reflect that, "absent extenuating circumstances," all of YSL's employees in California "are hired on a full-time basis, and are scheduled to work approximately 37–40 hours per week," and that YSL "did not employ any part-time employees in California from April 27, 2019 until the present." (Cosares Decl. ¶¶ 2, 4.)

Under the Settlement, Class Members will receive their shares of the net settlement fund automatically upon final approval by the Court, provided that they do not opt out. (Settlement § III.B, ¶ 6.)  Class Members who are also PAGA Aggrieved Employees will receive their share of the PAGA payment upon approval by the Court.  (*Id.* ¶ 3.)  No claims, forms, or other submissions are required to receive payment.  (*Id.* ¶¶ 3, 6.)

Class members will have 50 days from the initial mailing of Class Notice to seek exclusion from the Settlement or object to its terms.  (*Id.* § III.G, ¶¶ 3–4.)  Class Members who wish to opt out from the Class must send a signed request for exclusion—either via fax, mail, or email—to the Settlement Administrator before the exclusion deadline.  (*Id.* ¶ 4.)  Class Members who fail to provide timely objections to the Settlement will be deemed to have waived any objections and will be foreclosed from making any objection to the Settlement.  (*Id.*)

## II. CONDITIONAL CERTIFICATION OF THE CLASS

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Here, the parties seek a conditional certification of the class under Rule 23(b)(3). (Mot. at 20.) Rule 23(b)(3) permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. The Proposed Class Satisfies Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This Court has repeatedly held that "[a]s a general rule, classes of forty or more are considered sufficiently numerous." *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *3 (C.D. Cal. July 17, 2024) (Staton, J.) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds*, 555 F.3d 581 (9th Cir. 2012)).

6

Here, there are approximately 124 current and former YSL employees in the proposed Class.  (Robinson Decl. I ¶ 6.)  Numerosity is plainly met.

### 2.  Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50.  The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.*  "What matters to class certification … is not the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up).

Here, Plaintiff claims that she and all other Class Members were subject to the same compensation policies and practices whereby YSL failed to provide Class Members with statutorily-compliant meal and rest periods, required Class Members to perform off-the-clock work, failed to reimburse Class Members for necessary business-related expenses, and failed to pay all wages owed upon separation.  (Mot. at 19; Toney Decl. I ¶¶ 5–11.) Questions such as whether YSL provided lawful meal and rest periods, required employees to perform off-the-clock work, reimbursed employees for necessary business-related expenses, and timely paid all wages owed upon separation are common to all Class Members, and those questions can be answered by reference to uniformly-applied policies and practices and common records kept by YSL.  Plaintiff has therefore satisfied the commonality requirement.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive

with those of absent class members; they need not be substantially identical." *Dukes v.
Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) *rev'd on other grounds*,
564 U.S. 338 (2011) (quotations omitted). As to the representative, "[t]ypicality requires
that the named plaintiffs be members of the class they represent." *Id.*

Here, Plaintiff's claims, like those of the proposed Class, are premised on the
allegation that YSL's uniformly-applied policies and practices violate California wage and
hour laws. (Mot. at 20.) The claims thus arise from the same alleged conduct, and
Plaintiff falls within the Settlement's Class definition. (Sabzerou Decl. ¶ 4.) Accordingly,
typicality is met.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative
parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.
23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named
plaintiffs and their counsel have any conflicts of interest with other class members and (2)
will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the
class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on
other grounds by Dukes*, 564 U.S. 338 (2011).

As to Plaintiff's adequacy, Plaintiff has submitted a sworn declaration stating that
she was "injured by the same company-wide policies and practices to which the proposed
Class was subjected" and that "there is no conflict between [her] interests and the interests
of the class" she seeks to represent. (Sabzerou Decl. ¶ 7.) Given that Plaintiff seeks the
same legal remedies as the proposed Class arising from a similar course of conduct and
that YSL does not identify any adequacy concerns as to the proposed Class, the Court finds
no reason to challenge Plaintiff's adequacy to protect the interests of this class.
Accordingly, the Court concludes that Plaintiff is an adequate class representative.

As to the adequacy of Class Counsel, the Court must consider "(i) the work counsel
has done in identifying or investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiff seeks to appoint Michael Robinson and Orion Robinson of Robinson Di Lando, a Professional Law Corporation as Class Counsel. (Mot. at 22; *see also* Notice at 8.)  In prosecuting this action, Class Counsel have interviewed over fifteen of YSL's current and former employees; obtained and reviewed Plaintiff's employment records; retained wage and hour expert James Toney to review and analyze a 10% blind sample of YSL's time and payroll records; served three sets of requests for production and two sets of written discovery; participated in a full-day mediation; and engaged in settlement negotiations. (Mot. at 22; Robinson Decl. I ¶ 2.)  Michael Robinson has submitted a declaration asserting that he and his co-counsel have each handled over fifteen class and PAGA claims as either defense or plaintiff's counsel. (*Id.* ¶ 7.)  While the Court expects to see a greater description of their experience in any motion for final approval or attorneys' fees, it concludes that Michael Robinson and Orion Robinson have satisfied the adequacy requirement.  The Court therefore appoints Michael Robinson and Orion Robinson of Robinson Di Lando, a Professional Law Corporation as Class Counsel in this action.

## B. The Proposed Class Satisfies Rule 23(b)(3) Requirements

Plaintiff seeks to certify the class pursuant to Rule 23(b)(3), which considers whether common questions of law or fact predominate over individual questions and whether a class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.*  "When common issues present a significant aspect of the case and they can be

resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quotations omitted).

Here, the Class Members' claims turn on common questions such as whether YSL provided lawful meal and rest breaks, provided wages for off-the-clock work, reimbursed all necessary business-related expenses, and paid all wages owed upon separation. (Mot. at 21.) These common questions are all susceptible to class-wide proof, based on the payroll and timekeeping records provided by YSL, and will predominate in this action.

### 2. Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* "The overarching focus [of the superiority inquiry] remains whether trial by class representation would further the goals of efficiency and judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)). Additionally, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Considering the factors under Rule 23(b)(3)(A)–(D), the Court finds that the Class Members' potential "interests in individually controlling the prosecution … of separate actions" and the "likely difficulties in managing [the] class action" do not outweigh the "desirability … of concentrating the litigation of the claims" in one forum. *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D). Therefore, the Court finds that a class action would be a superior method of adjudicating Plaintiff's claims for the proposed Class.

### C. Conclusion as to Class Certification

Having found that the proposed Class satisfies Rule 23(a) and Rule 23(b)(3), the

Court conditionally certifies the Class for settlement purposes only.

### III.    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

To preliminarily approve a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, "[t]o determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up).  These factors overlap significantly with the factors codified in Rule 23(e)[3], and so approval under the *Staton* factors is coextensive with approval under the Federal Rules.  "The relative degree of

---

[2] This factor does not apply in this case.

[3] Rule 23 provides that a "court may approve" a class action settlement proposal "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not [] the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quotation marks omitted). The Court must therefore look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

At this preliminary stage, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is

appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

In evaluating all applicable factors below, the Court finds that the proposed Settlement should be preliminarily approved.

### A. Strength of Plaintiff's Case

The principal claims at issue involve YSL's alleged failure to provide meal and rest breaks, pay overtime wages for off-the-clock work, reimburse necessary business-related expenses, and timely pay all wages owed upon separation. (Toney Decl. I ¶¶ 6–11; Mot. at 23.) Plaintiff alleges that she and the Class Members were not provided with timely and uninterrupted meal and rest periods; were forced to "undergo bag checks by security/management after clocking out"; and were not reimbursed for expenses they incurred in "traveling to YSL sponsored functions" and "purchasing coffee … and snacks for YSL employees, customers, and clients." (Robinson Decl. II ¶¶ 3–4; Supp. Br. II at 3, Doc. 56.) While Plaintiff is confident that she "has a strong case and sufficient evidence to prosecute [her] claims," YSL disputes both its liability and Plaintiff's ability to proceed on a class-wide basis. (Mot. at 23.) Indeed, YSL intended to "vigorously oppose class certification" and was considering filing a motion for summary judgment had this case not resolved through settlement. (*Id.*; Robinson Decl. I ¶ 8.) YSL also maintains that some of Plaintiff's claimed damages are limited to Plaintiff. (*Id.*) For example, YSL asserts that Plaintiff's claimed business expenses include expenses associated with "client-entertainment outings" that were "not common" among other Class Members. (Robinson Decl. II ¶¶ 2–3.) Given these potential obstacles, the Court finds that this factor weighs in favor of granting preliminary approval.

### B. Risks, Complexity, and Likely Duration of Further Litigation

Plaintiff argues that continued litigation would delay—or potentially eliminate—any payment to the Class. (Mot. at 23; Robinson Decl. I ¶ 7.) Settlement eliminates the

13

risks inherent in YSL's anticipated motions for class decertification and summary judgment, trial, and subsequent appeals, and it may provide the last opportunity for Class Members to obtain relief.  This factor therefore weighs in favor of granting preliminary approval.  *See, e.g., Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (cleaned up).

### C.  Risk of Maintaining Class Action Status Throughout Trial

The Court has conditionally certified the Class for settlement purposes.  However, in any class action, there remains a risk of class decertification that is "not so minimal" as to preclude a Court from granting preliminary approval of a settlement agreement.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  The circumstances here indicate real risks of class decertification had the parties not reached a settlement agreement.  YSL maintains that the proposed Class Members "entered into arbitration agreements containing class action waivers that preclude them from participating in or proceeding with [this action] as a class action."  (Settlement §II, ¶ 8.)  Furthermore, Plaintiff is cognizant that "some courts have found that the issues [she raises], including off-the-clock work and meal and rest period violations, raise individualized issues that [may] render a case unmanageable and unsuitable for adjudication as to a large group of employees."  (Mot. at 23.)  The Court therefore finds that this factor weighs in favor of preliminary approval.

### D.  Amount Offered in Settlement

The Court further finds that the amount offered in settlement is reasonable.  The proposed Settlement provides for a gross settlement fund of $250,000, with approximately $84,332.14 reserved for individual payments to Class Members.  (Robinson Decl. I ¶ 5.)  No portion of the gross settlement fund will revert to YSL, and any disbursements that are not approved by the Court will increase the amount payable to Class Members.

14

(Settlement § 1, ¶¶ D, J.)  The gross settlement fund represents approximately 16.9% of YSL's maximum potential liability of $1,471,484.20, as calculated by Class Counsel.[4] (Toney Decl. II ¶¶ 6–12.)

Class Counsel calculated YSL's maximum potential liability based on (i) detailed analysis of a 10% blind sample of Class timekeeping and payroll records produced by YSL, and (ii) information gleaned from interviews with over fifteen current and former YSL employees.  (Robinson Decl. I ¶¶ 2,8.)  Plaintiff retained wage and hour expert James Toney to analyze the records and review several declarations that were submitted by individuals interviewed by Class Counsel.  (Toney Decl. I ¶¶ 3–6.)

Regarding meal and rest period claims, Toney calculated a total of $177,292 in potential damages.  (*Id.* ¶¶ 6–7.)  To arrive at this figure, Toney analyzed 27,665 time records for approximately 56,053 work shifts.  (*Id.* ¶ 6.)  Because YSL required meal start and end times to be recorded, the records revealed an 8.4% meal period violation rate. (*Id.*)  There were no records for rest breaks; however, Toney concluded that it was reasonable to assume that violation rate for rest breaks was the same as that for meal breaks (8.4%) based on Class Counsel's investigation and interviews with Class Members. (*Id.* ¶ 7.)

Toney calculated a total of $56,496 in potential damages for the off-the-clock work claim.  (*Id.* ¶ 8.)  This figure assumes that each Class Member performed 2.5 minutes of off-the-clock work per shift.  (*Id.*)  Plaintiff originally estimated that she and other Class members were forced to wait "up to 10 minutes" per shift for security/management to

---

[4] The Motion asserts that YSL's maximum potential liability is $1,028,931, and from this figure estimates that the gross settlement fund represents "more than 24%" of YSL's liability exposure. (Mot. at 24–25; Robinson Decl. I ¶ 9.)  However, in response to the Court's order requiring Class Counsel to provide supplemental briefing explaining how they calculated YSL's maximum potential liability, Class Counsel submitted the declaration of wage and hour expert James Toney.  (Toney Decl. I.)  This declaration explains the basis for the violation rates assumed with respect to each claim and estimates that YSL's total liability amounts to $1,471,484.20.  (*Id.* ¶¶ 6–11.)  Accordingly, the Court relies on the figures in Toney's declaration in analyzing the reasonableness of the amount offered in settlement.

conduct bag checks after they had clocked out.  (Robinson Decl. II ¶ 4.)  However, based on Class Counsel's interviews with Class Members and YSL's position that "bag checks were much quicker than 5 minutes," Toney adopted a reduced estimate of 2.5 minutes per bag check.  (*Id.* ¶ 6; Toney Decl. II ¶ 6.)

Toney calculated a total of $69,925 in potential damages for the expense reimbursement claim.  (Toney Decl. I ¶ 9.)  This figure assumes that each Class Member incurred $25 in unreimbursed business expenses per month.  (*Id.*)  These expenses include mileage and parking costs incurred in traveling to YSL sponsored events, as well as food and beverage purchases made for YSL employees and clients.  (Robinson Decl. II ¶ 3.)  Class Counsel assert that $25 per month for these expenses is a reasonable estimate based on information gleaned from interviews with Class Members.  (*Id.*)  Although Plaintiff maintains that she incurred unreimbursed business expenses of approximately $100 per month, Plaintiff acknowledges that her expenses were higher than most of her coworkers because she engaged in more "frequent [client] entertainment outings."  (*Id.* ¶¶ 2–3.)

Toney calculated a total of $398,971.20 in waiting time penalties.  (Toney Decl. I ¶ 10.)  To arrive at this amount, Toney multiplied 30 days by the pay rate, the average daily hours worked for each employee (8 hours per day), and the termination count for the full period (84).  (*Id.*)

As for the value of the PAGA claims, Toney calculated $768,800 in potential damages.  (*Id.* ¶ 11.)  Toney arrived at this amount by multiplying the pay period count of 7,688 by $100.  (*Id.*)

Adding together YSL's liability for unpaid meal and rest premiums, unpaid wages for off-the-clock work, unreimbursed business expenses, waiting time penalties, and PAGA penalties, the maximum potential liability for Plaintiff's class claims amounts to $1,471,484.20, of which the gross settlement fund of $250,000 comprises 16.9%.  This percentage is low compared to recoveries obtained in other wage and hour class actions. *See Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013)

(finding settlement amount of a wage and hour class action that constituted 24% of estimated damages to be reasonable and beneficial to the class); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding settlement of a wage and hour class action that constituted 25% to 35% of the claimed damages to be reasonable). However, a "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Given the risks of continued litigation described above, the Court finds the amount offered in settlement adequate for purposes of preliminary approval.

The allocation of settlement funds for individual payments also appears fair, adequate, and reasonable. The Settlement provides that individual payments will be apportioned *pro rata* based on the number of workweeks that each Class Member worked during the Class Period. (Settlement § III, ¶ 5.) *See Scott v. HSS Inc.*, 2017 WL 10378568, at *8 (C.D. Cal. Apr. 11, 2017) (Staton, J.) (preliminarily approving a similar method of apportionment in a wage and hour class action); *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). This method of apportionment appears particularly equitable here given YSL's representation that, absent extenuating circumstances, it employed only full-time employees in California during the Class Period. (Cosares Decl. ¶¶ 2, 4.)

Finally, the amount of the settlement fund appears fair, adequate, and reasonable in light of the claims released by Plaintiff and Class Members.[5] Release by Class Members is

---

[5] The Court notes that the definition of Class "Released Claims" set forth in the Settlement seems broader than that in the proposed Class Notice Form. As example, the Settlement's definition of Class "Released Claims" includes claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, even though no FLSA claims were pleaded in Plaintiff's complaint. (Settlement § III.E, ¶ 2.) To the extent these definitions of Class "Released Claims" differ, the Court treats the Class Notice Form's definition as the operative and proper scope of claims released by the Class. (*See* Class Notice at 6–7.)

limited to claims that were alleged in Plaintiff's complaint or that reasonably could have been alleged based on the facts and legal theories contained therein.  (Class Notice at 6–7.) The targeted scope of this release weighs in favor of preliminary approval.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citation omitted).

### 1.  The Court's Concerns

Although the Court does not approve the proposed attorneys' fees and service payments at this stage, the Court notes that it has two concerns with Plaintiff's proposed awards.

First, the Settlement provides for attorneys' fees of up to one-third of the gross settlement fund, subject to court approval.  (Settlement § III.B, ¶ 2.)  In the Ninth Circuit, the benchmark for fees is 25% of the common fund.  *See In re Bluetooth*, 654 F.3d at 942. Before final approval, the Court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" and will not "award[] unreasonably high fees simply because they are uncontested." *Id.* at 948 (cleaned up).  Class Counsel must therefore make a sufficient showing justifying any upward departure from the Ninth Circuit's fees benchmark to be awarded one-third of the gross settlement fund.

Second, the Settlement provides that Plaintiff may apply for an incentive payment of up to $10,000, subject to court approval.  (Settlement § III.B, ¶ 1.)  While the Court found no sign of a potential conflict of interest between Plaintiff and the Class Members, such a conflict may arise where there is a "significant disparity between the incentive award[] and the payments to the rest of class members." *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  In supporting her request for an

incentive award, Plaintiff must justify why the requested incentive payment is reasonable, especially in comparison to the anticipated recovery of the other Class Members.

### E.  Stage of the Proceedings and Extent of Discovery Completed

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney*, 151 F.3d at 1239. Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Here, Class Counsel obtained and reviewed payroll and timekeeping records from YSL, retained a wage and hour expert to analyze those records, and conducted interviews of more than fifteen Class Members including Plaintiff.  (Robinson Decl. I ¶ 2.)  Based on the information obtained through Class Counsel's investigation and informal discovery efforts, the parties participated in settlement discussions with a mediator.  (*Id.* ¶ 3.)  After engaging in settlement negotiations for several months thereafter, the parties eventually reached an agreement to settle this case.  (*Id.* ¶ 3.)

Given these circumstances, the Court concludes that the parties possess sufficient information to make an informed settlement decision.  S*ee In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services").  Accordingly, this factor weighs in favor of granting preliminary approval.

### F.  Experience and Views of Counsel

As discussed above, Class Counsel have some experience litigating wage and hour claims on a class basis and have endorsed the Settlement as fair, reasonable, and adequate. Parties represented by competent counsel are well-positioned "to produce a settlement that fairly reflects each party's expected outcome in litigation."  *See Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *9 (C.D. Cal. Sept. 15, 2016) (Staton, J.)

Accordingly, Class Counsel's endorsement also weighs in favor of approving the settlement.

### G. Reaction of Class Members to Proposed Settlement

Aside from Plaintiff's representation that she finds the Settlement to be "fair, reasonable, and adequate," (Sabzerou Decl. ¶ 9), the parties have not provided evidence of the Class Members' reactions to the Settlement. However, the Court recognizes that lack of such evidence is not uncommon at the preliminary approval stage. Before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from Class Members discussing their reactions to the proposed Settlement.

### H. Signs of Collusion

The Court finds no sign, explicit or subtle, of collusion between the parties. As noted, before final approval, the Court will closely examine the relationship between attorneys' fees and benefit to the class and will consider whether the requested incentive award is justified by the circumstances of this case. *See In re Bluetooth*, 654 F.3d at 948.

### I. Conclusion as to Preliminary Approval of the Settlement

Considering all factors together, the Court preliminarily concludes that the Settlement Agreement is fair, reasonable, and adequate, and appears to be the product of serious, informed, non-collusive negotiations.

## IV. SETTLEMENT ADMINISTRATOR

The parties agree to appoint Phoenix Class Action Administration Solutions ("Phoenix") to serve as Settlement Administrator. (*See* Settlement § I, ¶ V.) The costs incurred by Phoenix in the course of administering the Settlement are estimated to be at most $6,500. (*Id.* § III.B, ¶ 4.) The Court would have expected the Motion to explain the process by which the Settlement Administrator was chosen, whether Counsel sought multiple bids, and why they decided upon Phoenix. The Motion includes none of that. However, in light of the relatively minimal costs anticipated, the Court approves Phoenix as the Settlement Administrator in this action.

## V. **CLASS NOTICE FORM AND METHOD**

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

The Settlement sets forth the following method of providing notice to the Class. Within 50 days of preliminary approval, YSL shall provide to the Settlement Administrator a list of all Class Members that includes the Class Members' names, last known mailing addresses, telephone numbers, and Social Security numbers. (Settlement § I.Y, § III.G, ¶ 3b.) Within 21 days of receipt of this list, the Settlement Administrator will mail the Class Notices by first-class mail. (*Id.* § III.G, ¶ 3a.) Prior to mailing the Class Notices, the Settlement Administrator will conduct a search of the national change of address database and, if necessary, a skip tracing search, to ensure that the address for each Class Member is accurate and up to date. (*Id.*) Class Members may opt out from or object to the Settlement within 50 days of the initial mailing of the Class Notice. (*Id.*) The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702 at *8 (C.D. Cal. June 30, 2011) (quoting *Mullane*). The Court finds that the proposed procedure for Class Notice satisfies this standard.

Plaintiff has provided the Court with a copy of the proposed Notice. (Class Notice Form, Doc. 52-1.) Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner

for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Having reviewed the proposed Notice, the Court requires that the following modifications be made:

- On Page 1 of the proposed Notice, the table that sets forth Class Members' "rights and options" should also state **the deadlines** to object or request exclusion.

- On Page 8 of the proposed Notice, the section entitled "Are There More Details Available?" should also state that all papers filed in this action, and the Court's docket, are available for review via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

- The proposed Notice should clearly set forth that (i) the motion for attorneys' fees, costs, and Plaintiff's service award will be filed **at least 15 days before the deadline to object**, (ii) Class Members may review this motion through PACER, and (iii) Class Members may object to the requests for attorneys' fees, costs, and service award.

Subject to the above changes, the Court approves the form and method of Class Notice. The Court ORDERS the parties to file a revised version of the Notice **within 7 days of this Order.**

Finally, the Court notes that its jurisdiction over this matter arises from the Class Action Fairness Act. (*See* Notice of Removal.) In their papers for final approval of the Settlement, the parties must include a declaration reflecting that they provided appropriate notice of the Settlement to relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date of the final fairness hearing. 28 U.S.C. §

1715(d); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official.'") (quoting 28 U.S.C § 1715(b)).

## VI. <u>CONCLUSION</u>

For the above reasons, the Court (1) conditionally certifies the Class for settlement purposes only, (2) preliminarily approves the Settlement, (3) names Titania Sabzerou as Class Representative, (4) names Michael Robinson and Orion Robinson as Class Counsel, (5) approves Phoenix Class Action Administration Solutions as Settlement Administrator, and (6) approves the form and method of Class Notice, subject to the changes discussed above. The Court ORDERS the parties to file a revised version of the Class Notice **within 7 days of this Order**.

The Court sets a final fairness hearing for **October 24, 2025, at 10:30 a.m.** to determine whether the Settlement should be finally approved as fair, reasonable, and adequate to Class Members. Plaintiff shall file her motion for final approval **no later than September 26, 2025**, including a brief responding to any submitted objections and otherwise summarizing the Class Members' participation in the Settlement and its administration to date. Class Counsel shall file any motion for attorneys' fees, costs, and service payment **no later than 15 days before** the exclusion deadline. The Court reserves the right to continue the date of the final fairness hearing without further notice to Class Members.


DATED:  May 12, 2024

## JOSEPHINE L. STATON

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE