Michael C. Robinson, Jr. (SBN 120308)
mrobinson@rdwlaw.com
Orion S. Robinson (SBN 293796)
orobinson@rdwlaw.com
ROBINSON DI LANDO
A Professional Law Corporation
801 South Grand Avenue, Suite 500
Los Angeles, California 90017
Telephone:  (213) 229-0100
Facsimile:  (213) 229-0114

Attorneys for Plaintiff
TITANIA SABZEROU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITANIA SABZEROU, an individual on behalf of herself and all similarly situated aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>YVES SAINT LAURENT AMERICA, INC., a New York corporation; JESSICA ALVAREZ, an individual; and DOES 1-30, inclusive,<br><br>Defendants. | Case No. 8:23-cv-01355-JLS-JDE<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[*Concurrently filed with (1) Declaration of Lluvia Islas (2) Declaration of Orion S. Robinson; (3) Declaration of Amanda E. Beckwith; (4) [Proposed] Order*]<br><br><u>Hearing on Motion</u><br>Date: October 24, 2025<br>Time: 10:30 a.m.<br>Place: Courtroom 8A<br>Judge: Honorable Josephine L. Staton<br><br>Action Filed: January 18, 2024<br>Trial Date:    Not Set |

1
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT; MEM. POINTS & AUTHORITIES

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2025 at 10:30 a.m., or as soon as thereafter as this matter may be heard by the Honorable Josephine L. Staton in Courtroom 8A (First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, 8th Floor), plaintiff Titania Sabzerou ("Plaintiff" and/or "Sabzerou") will and does move for an order for final approval of the class settlement and setting a final fairness hearing.

This Motion is made under the Federal Rules of Civil Procedure, including Rule 23. The proposed class satisfies the requirements of Rule 23(a) and rule 23(b). The proposed settlement is fair, reasonable, and adequate, and there are no signs of collusion. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 25, 2025.

This Motion is based on this Notice, the following Memorandum in support of this Motion, all pleadings and papers on file, all matters of which the Court may take judicial notice, the concurrently filed Declaration of Orion S. Robinson, Declaration of Lluvia Islas of Phoenix Settlement Administrators, Declaration of Amanda E. Beckwith, and any other written or oral evidence that may be presented at the hearing on this Motion.

DATED: September 26, 2025

ROBINSON DI LANDO
A Professional Law Corporation

By: /s/ *Orion S. Robinson*
MICHAEL C. ROBINSON, JR.
ORION S. ROBINSON

Attorneys for Plaintiff
TITANIA SABZEROU

2
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEM. POINTS & AUTHORITIES

# Table of Contents

I. INTRODUCTION ……………………………………………………………… 5

II. PROCEDURAL BACKGROUND …………………………………………….. 6

III. THE SETTLEMENT PROCESS ……………………………………………… 7

    A. Preliminary Approval of the Proposed Settlement ……………….…… 7

    B. Distribution of the Notice …………………………………………….. 7

    C. Class Participation in the Settlement …………………………………. 9

    D. Defendant's CAGA Notice …………………………………………… 9

    E. Summary of Settlement Terms ……………………………………….. 10

        1. Definition of Settlement Class and Aggrieved Employees ………….. 10

        2. Gross Settlement ……………………………………………………. 10

        3. Allocation and Funding of the Gross Settlement Amount ………….. 10

IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED …….. 12

    A. The Settlement is Fair, Reasonable and Adequate …………………… 12

    B. The Expense, Complexity, and Duration of Continued Litigation Favors Final Approval …………………………………………………………... 14

    C. There Are No Signs of Collusion …………………………………….. 14

    D. Class Members' Positive Reaction to the Settlement Favors Final Approval ……………………………………………………………….. 15

V. CLASS COUNSEL'S ATTORNEY'S FEES AND COSTS AND THE SERVICE PAYMENT ARE FAIR AND REASON AND SHOULD BE APPROVED ………………………………………………………………….. 15

VI. THE COURT SHOULD APPROVE THE PAYMENT TO PHOENIX FOR SETTLEMENT ADMINISTRATION …………………………………….. 16

VII. CONCLUSION …………………………………………………………….. 16

ROBINSON DI LANDO
A Professional Law Corporation
Los Angeles, California

<a>
</a>
<b>
</b>

# TABLE OF AUTHORITIES

## CASES

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .................... 12

*Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1027 (9th Cir. 1998) ............................. 13

*Lee v. JPMorgan Chase & Co.,* 2015 WL 12711659, at *6 (C.D. Cal. Apr. 28, 2015) ................................................................................................................ 14

*Rollins v. Dignity Health,* 336 F.R.D. 456, 461 (N.D. Cal. 2020) ................................ 14

*Van Bronkhorst v. Safeco Corp,* 529 F.2d 943, 950 (9th Cir. 1976) ........................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff alleges various wage claims against defendant Yves Saint Laurent, Inc.("YSL") and Jessica Alvarez (collectively, "Defendants"). The Parties agreed to settle the case. On May 12, 2025, the Court held a hearing on the Motion for Preliminary Approval of the Settlement, and the Court (1) conditionally certified the Class for settlement purposes only, (2) preliminarily approved the Settlement, (3) named Titania Sabzerou as Class Representative, (4) named Michael Robinson and Orion Robinson as Class Counsel, (5) approved Phoenix Class Action Administration Solutions as Settlement Administrator, and (6) approved the form and method of Class Notice, subject to certain changes. The notice process is complete, and Plaintiff now seeks final approval of the Settlement.

As of the execution of this Motion, no Class Members have objected to the Settlement. If final approval is granted, 136 Settlement Class Members will receive a settlement payment as their share of the non-revisionary Net Settlement Amount (the "NSA"). Settlement Class Members are expected to receive an average payment of $601.56, with the highest payment being $1,684.54. The California Labor and Workforce Development Agency (the "LWDA") will receive $37,500, and the aggrieved employees will receive an average of $91.91 for the PAGA settlement, with the highest payment being $256.09. Considering the defenses raised by Defendants and the potential challenges of further litigation, this is a favorable result.

The Settlement is fair, reasonable, and adequate, and it satisfies the requirements for final approval. Plaintiff therefore respectfully requests that he Court issue a final order that (i) grants final approval of the Settlement; (ii) approves distribution of the settlement funds to the Settlement Class Members and the LWDA; (iii) approves Class Counsel's fee award of $62,500.00 (equal to the 25% benchmark fee award in the Ninth Circuit) plus costs in the amount of $15,834.53; (iv) approves a

Service Payment to Plaintiff in the amount of $10,000.00; and (v) approves payment of $6,500 to Phoenix Class Action Administration Solutions for settlement administration and costs.

## II. PROCEDURAL BACKGROUND

On or about February 8, 2023, Plaintiff filed a letter with the Labor and Workforce Development Agency ("LWDA") and provided copies of this letter to Defendants via certified mail, asserting claims for Defendants' alleged violations of Labor Code Sections 2699.5, 98.6, 200, 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1102.5, 1174, 1194, 1197, 1197.1, 1198.5, 2802, and 2699.

On April 27, 2023, Plaintiff filed a class action complaint in Orange County Superior Court. (*See* Compl. (Doc. 1-3.). The Complaint alleges the following causes of action against defendants Yves Saint Laurent, Inc. and Jessica Alvarez (collectively, "Defendants"): (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Pay Wages Due at Termination; (6) Failure to Furnish Accurate Wage Statements; (7) Failure to Furnish Payroll Records; (8) Failure to Furnish Personnel Records; (9) Failure to Reimburse Necessary Business Expenses; (10) Unfair Competition; and (11) Civil Penalties Under the PAGA. (*See* Compl., Doc. 1-3.). On or about July 27, 2023, Defendants removed the case to this Court. (*See* Doc. 1.)

As described more fully in the Motion for Preliminary Settlement Approval (Doc. 43) and Motion for Attorneys' Fees and Costs (Doc. 64), Plaintiff conducted an extensive investigation of the claims, engaged in considerable discovery, obtained and analyzed considerable records, and retained an expert on wage compliance. (Declaration of Michael C. Robinson, Jr. in Support of Motion for Preliminary Approval of Settlement ("Robinson Prelim. Approval Decl.") ¶¶ 2–4, 7–8, 11–12 (Doc. 43-1 at 2, 4, 5–6.); Declaration of Orion S. Robinson in Support of Motion for Attorneys' Fees, Costs, and Service Payment ("Robinson Fee Decl.") ¶ 4 (Doc. 64-1

at 3–4).) Plaintiff and her counsel interviewed over fifteen former and current employees regarding the claims, and obtained ten declarations regarding the claims. (Robinson Fee Decl. ¶ 4 (Doc. 64-1 at 3–4).) The Parties engaged in a mediation and settled the case after several months of negotiations. (Robinson Prelim. Approval Decl. ¶ 3 (Doc. 41-1 at 2); Robinson Fee Decl. ¶ 4 (Doc. 64-1 at 4).)

### III.   THE SETTLEMENT PROCESS

#### A. Preliminary Approval of the Proposed Settlement

On May 12, 2025, the Court issued an order preliminarily approving the proposed Settlement. (Prelim. Approval Order (Doc. 60).) The Settlement provides for a non-reversionary gross settlement amount of $250,000. (Prelim. Approval Order (Doc. 60 at 14).) The Court appointed Class Counsel and appointed Plaintiff as the Class Representative. The Court also approved the appointment of Phoenix Class Action Administration Solutions ("Phoenix") as the settlement administrator in this action. (Prelim. Approval Order (Doc. 60 at 20).) In granting preliminary approval to the proposed Settlement, the Court determined, on a preliminary basis, that the proposed Settlement is fair, adequate, and reasonable. (Prelim. Approval Order (Doc. 60 at 13).) In light of the preliminary approval, the Court set a final fairness hearing for October 26, 2025. (Prelim. Approval Order (Doc. 60 at 23).) The Court directed the Parties to complete the terms of the Settlement and the mailing of the Settlement Notice to Class Members (with the changes noted in the Court's order).

#### B. Distribution of the Notice

Phoenix was selected by the Parties to provide notice of the Settlement and perform class administration duties in this Action. Pursuant to the Stipulation of Class Action Settlement for this matter, Phoenix was responsible for: (i) preparing, translating, printing, and mailing the *Notice of Proposed Settlement of Class Action* ("Notice"); (ii) responding to any inquiries from Class Members; (iii) calculating the number of weeks each Class Member worked during the period from April 27, 2019 to May 12, 2025 ("Class Period") and the number of pay

periods each Aggrieved Employee worked during April 27, 2022 to May 12, 2025 (PAGA Period); (iv) determining the validity of any letters indicating a request to be excluded from the Class Settlement ("Requests for Exclusion"), any written objections to the Class Settlement ("Objections"), and/or any disputes regarding the number of Workweeks submitted by Class Members; (v) calculating the Net Settlement Amount and the Individual Settlement Shares to Class Members; (vi) calculating and issuing the Individual Settlement Payments and distributing them to Settlement Class Members; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the Enhancement Payment to Plaintiff, and the employer/employee payroll taxes to the appropriate taxing authorities; and (viii) such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or as the Court orders. (Declaration of Lluvia Islas of Phoenix Settlement Administrators ("Islas Decl.") ¶ 2.)

On July 1, 2025, Phoenix received a data file from Defense Counsel that contained names, last known mailing addresses, telephone numbers, Social Security numbers, and weeks worked for each Class Member ("Class List") during the Class Period. (Islas Decl. ¶ 3.) The final mailing list contained one hundred thirty-six (136) individuals identified as Class Members. (Islas Decl. ¶ 3.)

On July 1, 2025, Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. (Islas Decl. ¶ 4.) A search of this database provides updated addresses for any individual who has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address. (Islas Decl. ¶ 4.)

On July 23, 2025, Phoenix mailed the Notice via U.S. first class mail to all one hundred thirty-six (136) Class Members on the Class List. (Islas Decl. ¶ 5 & Ex. A.)

As of the date of this Motion, seven (7) Notices have been returned to Phoenix. (Islas Decl. ¶ 6.) None were returned with a forwarding address. (Islas

Decl. ¶ 6.)  For the seven (7) Notices returned from the Post Office without a forwarding address, Phoenix attempted to locate a current mailing address using idiCORE, one of the most comprehensive address databases available for skip tracing.  (Islas Decl. ¶ 6.) Of the seven (7) Notices that were skip traced, seven (7) updated addresses were obtained and the Notice was promptly re-mailed to those Class Members via first class mail.  (Islas Decl. ¶ 6.)  As of the date of this Motion, zero (0) Notices remain undeliverable, because an updated address could not be obtained via skip trace.  (Islas Decl. ¶ 7.)

### C. Class Participation in the Settlement

After the Settlement Notices were issued to the Class, Class Counsel has not received any communications—objections or otherwise—from the Class Members. (Declaration of Orion S. Robinson in Support of Motion for Final Settlement Approval ("Robinson Final Approval Decl.") ¶ 2.).  Further, as of the date of this Motion, Phoenix has received zero Requests for Exclusion from Class Members. (Islas Decl. ¶ 8.) The deadline to request exclusion from the Class Settlement was September 11, 2025.  (Islas Decl. ¶ 8 & Ex. A.)  As of the date of this declaration, Phoenix has received zero Notices of Objection from Class Members.  (Islas Decl. ¶ 9.)  The deadline for objecting to the Class Settlement was September 11, 2025. (Islas Decl. ¶ 9 & Ex. A.)  As of the date of this declaration, Phoenix has received zero Workweek disputes from Class Members.  (Islas Decl. ¶ 10.)  The deadline for submitting a dispute was September 11, 2025.  (Islas Decl. ¶ 10.)  The Settlement currently has a 100% participation rate.  (Islas Decl. ¶ 12.)

### D. Defendants' CAFA Notice

Notification of the proposed Settlement was provided to appropriate officials has been provided under 28 U.S.C. §1715. (Declaration of Amanda E. Beckwith Regarding Defendants' CAFA Notice ("Beckwith Decl.") ¶¶ 2–3, Ex. A.)

///

///

///

### E. Summary of Settlement Terms

#### 1. Definition of Settlement Class and Aggrieved Employees

Under the Settlement Agreement, the Settlement Class means all current and former nonexempt employees of YSL employed during the Settlement Class Period who did not sign an arbitration agreement or an individual release of claims. (*See* Settlement Agreement at 6.) PAGA Aggrieved Employees means all current and former nonexempt employees of YSL employed during the PAGA Period. (*See* Settlement Agreement at 4.)

#### 2. Gross Settlement Amount

The Parties agreed to settle the claims at issue for a Gross Settlement Amount of $250,000.00. The Gross Settlement Amount means a non-reversionary common fund that shall have a total all-in value of $250,000.00 and includes without limitation any and all payments Defendant may be responsible for under the Settlement, including any Fees Award and Costs Award to Class Counsel, Named Plaintiff Enhancement Payments, the Class Member Payments, the PAGA Payments (which includes payments to the LWDA), Settlement Administration Costs, and all payroll taxes (exclusive of employer-side payroll taxes) due and owing as a result of the Settlement. (*See* Settlement Agreement at 4.) The PAGA payment allocation amount is $50,000.00. (*See* Settlement Agreement at 12.)

#### 3. Allocation and Funding of the Gross Settlement Amount

The Settlement is a common fund and therefore includes all requested costs, fees, and other allocations. Further, from the Gross Settlement Amount, $50,000 is allocated to the PAGA Claim to be paid to the LWDA and PAGA Members. (*See* Settlement Agreement at 12–13.) After the foregoing amounts are deducted from the Gross Settlement Amount, the remaining Net Settlement Amount will be paid to the Settlement Class. (*See* Settlement Agreement at 2.). All Settlement Class Members will receive a Class Member Payment, paid from the Net Settlement Amount without

the need to make a claim. (*See* Settlement Agreement at 2, 13–14.) The amount of each Class Member Payment is calculated on a pro rata basis, based on the number of workweeks each Settlement Class Member worked during the Settlement Class Period. (*See* Settlement Agreement at 14.) To establish the workweek value, the Settlement Administrator first determines the total number of workweeks worked by the Settlement Class Members during the Settlement Period. (*See* Settlement Agreement at 14.) The workweek value is equal to the Net Settlement Amount divided by the total number of workweeks worked by Settlement Class Members during the Settlement Period not previously released in other matters. (*See* Settlement Agreement at 14.) The workweek value is rounded to the nearest cent. (*See* Settlement Agreement at 14.) The Class Member Payment to each Settlement Class Member will be determined by multiplying the workweek value by the total number of workweeks each of the Settlement Class Members worked during the Settlement Class Period. (*See* Settlement Agreement at 14.) The total of all Class Member Payments to all Settlement Class Members shall equal the Net Settlement Amount. (*See* Settlement Agreement at 14.) There is no need for a Settlement Class Member to submit a claim form in order to be eligible for and to receive a Class Member Payment. (*See* Settlement Agreement at 14.) Any partial workweek is rounded up to the nearest full workweek. (*See* Settlement Agreement at 14.) Class Member Payments will be reduced by any required deductions for each Settlement Class Member. (*See* Settlement Agreement at 14.)

The PAGA Payment amount is $50,000 and distributed as follows: 75% of the Net Settlement Amount will be paid to the LWDA ($37,500.00) and the remaining 25% will be paid to all Aggrieved Employees on a pro rata basis based upon the number of pay periods worked by each Aggrieved Employee during the PAGA Period ($12,500.00). (*See* Settlement Agreement at 12–13.)

There are one hundred thirty-six (136) Class Members who did not submit timely and valid Requests for Exclusion and are therefore deemed Settlement

Class Members, representing 100% of the Class. (Islas Decl. ¶ 12). Settlement Class Members have worked a collective total of fifteen thousand four hundred forty-four (15,444) Workweeks during the Class Period. (Islas Decl. ¶ 12). The highest Individual Settlement Share to be paid is approximately $1,684.54, the lowest Individual Settlement Share to be paid is approximately $5.30 and the average Individual Settlement Share to be paid is approximately $601.56. (Islas Decl. ¶ 12). Settlement Class Members will be issued payment of their Individual Settlement Shares subject to reduction for the Settlement Class Member's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Share (the net payment is their "Individual Settlement Payment"). (Islas Decl. ¶ 12). Pursuant to the Settlement, Defendant has agreed to fund the employer-side taxes due separately and apart from the Gross Settlement Amount. (Islas Decl. ¶ 12).

There are one hundred thirty-six (136) Aggrieved Employees who worked a total of seven thousand seven hundred sixty-one (7,761) pay periods during the PAGA Period. (Islas Decl. ¶ 13). The highest Individual PAGA Payment to be paid is approximately $256.09, the lowest Individual PAGA Payment to be paid is approximately $1.61, and the average Individual PAGA Payment to be paid is approximately $91.91. (Islas Decl. ¶ 13).

In exchange for the settlement payments, Class Members will release the narrowly drawn released claims.

## IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

### A. The Settlement is Fair, Reasonable and Adequate

Before approving a class-action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of

formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp,* 529 F.2d 943, 950 (9th Cir. 1976).

The settlement is fair, reasonable and adequate. The Parties negotiated the settlement in good faith and at arm's length, following an intensive investigation of the factual and legal claims, a full-day mediation session, and several months of negotiating. (Robinson Prelim. Approval Decl. ¶¶ 2–4, 7–8, 11–12 (Doc. 43-1 at 2, 4, 5–6.).) The Parties engaged in extensive discovery, both formal and informal, and fully apprised each other of their factual contentions, legal theories, and defenses. (Robinson Prelim. Approval Decl. ¶ 2 (Doc. 43-1 at 2).) Further, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1027 (9th Cir. 1998). As shown here and in the Motion for Preliminary Approval, the Settlement is fair, reasonable, and adequate and should be granted final approval.

The Settlement provides for immediate benefits payable to Class Members, should final approval be granted. The amounts to be paid are not nominal, and there are no non-cash benefits in the settlement. Additionally, the LWDA will receive a sizeable payment ($37,500) as its share of the settlement attributable to civil penalties under PAGA. The monetary recoveries for both the Class and the State of California are fair, reasonable, and adequate and justify final approval.

Importantly, any Class Member, upon reviewing the Class Notice, who is unsatisfied with its terms or who simply did not wish to participate in the settlement had the right to request to be excluded from the settlement, in which case the Class Member would retain claims he or she may have against Defendants which would

otherwise be released through participation in the settlement. Moreover, Class Members who did not opt out have the opportunity to object to the settlement.

Defendants had legal and factual grounds for defending the action, which is relevant to the reasonableness of the settlement. From the outset of this litigation, YSL denied each of Plaintiff's allegations as they apply to each class member, and challenged that the claims could be certified. (Robinson Prelim. Approval Decl. ¶ 10 (Doc. 43-1 at 4–5).) YSL asserted that the company had the proper policies and procedures in place to comply with the Labor Code, and that the employees' time and payroll records evidenced compliance with the Labor Code. (Robinson Prelim. Approval Decl. ¶ 10 (Doc. 43-1 at 4–5).) Nonetheless, Plaintiff was able to achieve a $250,000 settlement for these highly disputed claims.

### B. The Expense, Complexity, and Duration of Continued Litigation Favors Final Approval

Employment class action cases are expensive and time consuming to prosecute. Continued litigation of this action would likely have been very time consuming given the complexity of the claims, unique issues involving multiple categories of hourly employees (sales, cashiers, and various store positions) and defenses asserted by Defendants. The settlement avoids the need for further contested litigation that would be lengthy and costly for Plaintiff to continue, Defendants to oppose, and the Court to decide. The settlement avoids the risk of a trial and provides Class Members with money now.

### C. There Are No Signs of Collusion

A proposed settlement "must be fair and free of collusion [and] consistent with counsel's fiduciary obligations to the class." *Rollins v. Dignity Health,* 336 F.R.D. 456, 461 (N.D. Cal. 2020). The settlement was reached with the assistance of a third-party neutral. (Robinson Prelim. Approval Decl. ¶ 3 (Doc. 43-1 at 2).) This "supports the argument that [the agreement] is non-collusive," *see Lee v. JPMorgan Chase & Co.,* 2015 WL 12711659, at *6 (C.D. Cal. Apr. 28, 2015).

### D. Class Members' Positive Reaction to the Settlement Favors Final Approval

There is currently a 100% participation rate. Moreover, zero Class Members have objected to the settlement. No class member has objected to the actual terms of the settlement, including the Class Counsel's attorneys' fees and expenses, claims administrator's fees, or representative service payment. The Court should construe the non-opposition to the settlement as a strong indication of Class Members' support for the settlement as being fair, reasonable, and adequate and deserving of final approval. In an effort to comply with the Court's Order Granting in Part Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement, Plaintiff will endeavor to submit before the final fairness hearing, declarations from Class Members discussing their reactions to the proposed Settlement. (Doc. 60 at 20.)

### V. CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS AND THE SERVICE PAYMENT ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

On August 27, 2025, Plaintiff filed a Motion for Attorney's Fees and Costs, which Motion is set to be heard on October 24, 2025. (Doc. 64.) For the reasons stated therein, Plaintiff respectfully submits that the requested attorneys' fee award in the amount of $62,500.00 is fair and reasonable in light of the time spent litigating this matter, extensive investigation and discovery, and the achievement of the monetary results for the Class Members in light of YSL's vigorous defense. For the same reasons, Plaintiff also respectfully submits the proposed cost reimbursement request in the amount of $15,834.53 which is fair and reasonable. Based on Class Counsel's experience in wage and hour class actions, all of this work was necessary for the successful prosecution and settlement of the action. Additionally, Plaintiff seeks an enhancement service payment in the amount of $10,000.00. This enhancement is intended to recognize the time and efforts that Plaintiff spent on behalf of the Class Members and the risks Plaintiff assumed in acting as the Representative in the action as set forth in Plaintiff's Motion for Attorney's Fees and Costs.

## VI. THE COURT SHOULD APPROVE THE PAYMENT TO PHOENIX FOR SETTLEMENT ADMINISTRATION

As part of the preliminary approval process, this Court approved the hiring of Phoenix as the settlement administrator. Phoenix has performed all of its required duties to date and is committed to completing the claims administration process. (*See generally* Islas Decl.). Phoenix's total cost for the administration of the settlement, including future fees and costs for completion of the administration is $6,500. (Islas Decl. ¶ 14.) Plaintiff respectfully requests that this Court, as part of its final order approving the settlement, approve payment to Phoenix in connection with administering the settlement.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that he Court issue a final order that (i) grants final approval of the Settlement; (ii) approves distribution of the settlement funds to the Settlement Class Members and the LWDA; (iii) approves Class Counsel's fee award of $62,500.00 (equal to the 25% benchmark fee award in the Ninth Circuit) plus costs in the amount of $15,834.53; (iv) approves a Service Payment to Plaintiff in the amount of $10,000.00; and (v) approves payment of $6,500 to Phoenix Class Action Administration Solutions for settlement administration and costs.

DATED: September 26, 2025

ROBINSON DI LANDO
A Professional Law Corporation

By: /s/ *Orion S. Robinson*
MICHAEL C. ROBINSON, JR.
ORION S. ROBINSON

Attorneys for Plaintiff
TITANIA SABZEROU

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for plaintiff TITANIA SABZEROU, an individual on behalf of herself and all similarly situated aggrieved employees, certifies that this brief contains 3,752 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 26, 2025

ROBINSON DI LANDO
A Professional Law Corporation

By: /s/ *Orion S. Robinson*
    MICHAEL C. ROBINSON, JR.
    ORION S. ROBINSON

Attorneys for Plaintiff
TITANIA SABZEROU