UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TITANIA SABZEROU, et al.,

　　　　　Plaintiffs,

　v.

YVES SAINT LAURENT AMERICA, INC., et al.,

　　　　　Defendants.

CASE NO. 8:23-cv-01355-JLS-JDE

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND PAGA SETTLEMENT (Doc. 67); AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT (Doc. 64)**

1

Before the Court are two unopposed Motions filed by Plaintiff: one seeking final approval of class and PAGA settlement, and another seeking attorneys' fees, costs, and a class-representative service award. (Final Approval Mot., Doc. 67; Fees Mot., Doc. 64.) The Court held a final fairness hearing on October 24, 2025. Having considered the papers and having held oral argument, the Court now GRANTS Plaintiff's motion for final approval and GRANTS IN PART Plaintiff's motion for attorneys' fees, costs, and service award.

I.  **BACKGROUND**

The Court detailed the background facts of this action in its Order granting preliminary approval of the class action settlement ("Preliminary Approval Order"). (*See* Prelim. Approval Order, Doc. 60.) In brief, Plaintiff Titania Sabzerou, a former employee of Defendant Yves Saint Laurent America, Inc. ("YSL"), initiated this class action in Orange County Superior Court against Defendants YSL and Jessica Alvarez, bringing claims pursuant to the California Labor Code, including the Private Attorneys General Act ("PAGA"). (Ex. C to NOR, Compl., Doc. 1-3.) On July 23, 2023, YSL removed pursuant to the Class Action Fairness Act ("CAFA"). (NOR, Doc. 1.)

The parties filed a notice of settlement on August 28, 2024. (Doc. 37.) On December 6, 2024, Plaintiff moved for preliminary approval of the class and PAGA settlement. (Doc. 43.) The same day, Plaintiff's counsel filed the settlement with the Labor and Workforce Development Agency ("LWDA"). (Third Robinson Decl. ¶ 3, Doc. 74.) The Court held a hearing on January 10, 2025, and then requested supplemental information including (1) a declaration or other evidence supporting the calculation of YSL's maximum potential liability; (2) briefing addressing the Court's concerns regarding the equity of the distribution of the gross settlement amount; and (3) a proposed class notice form. (Minutes of Hearing, Doc. 51.) On March 10, 2025, the parties timely filed the following additional documents: (1) the declaration of wage and hour expert James Toney (Toney Decl. I, Doc. 52-2); (2) the declaration of Jenna Cosares, who served as

YSL's Senior Human Resources Manager for the West Coast Region from November 2020 through December 2023 and is currently employed by YSL (Doc. 54); (3) a proposed Class Notice Form (Doc. 52-1); and (4) a Modified Settlement Agreement (the "Settlement") (Settlement, Doc. 52-3). On April 5, 2025, the Court requested further supplemental briefing regarding the violation rates assumed in calculating YSL's maximum potential liability. (Order Req. Further Supp. Br., Doc. 55.) On April 18, 2025, Plaintiff timely filed two additional declarations—one of James Toney, and the other of Michael Robinson—addressing this issue. (Doc. 56-1; Toney Decl. II, Doc. 59.) The Court granted preliminary approval of the settlement on May 12, 2025. (Prelim. Approval Order.)

### A. The Settlement

The Court conditionally certified a "Settlement Class" including "all current and former nonexempt employees of [YSL] employed during the [] Class Period who did not sign an arbitration agreement or an individual release of claims." (*Id.* at 4; Settlement § I, ¶ W.) The Class Period is from April 27, 2019, to May 12, 2025. (Updated Islas Decl. ¶ 2, Doc. 75.) The Settlement further defines "PAGA Aggrieved Employees" as "all current and former nonexempt employees of [YSL] employed during the PAGA Period," which begins on April 27, 2022, and ends on May 12, 2025. (Prelim. Approval Order at 4; Settlement § I, ¶ O; Updated Islas Decl. ¶ 2.) The settlement administrator Phoenix Settlement Administrators ("Phoenix") found that there are 136 members of the Settlement Class ("Class Members") and 268 PAGA Aggrieved Employees. (Updated Islas Decl. ¶¶ 3, 15.)

The Settlement provides for a non-reversionary gross settlement amount of $250,000 (the "Total Settlement Fund"). (Settlement §§ III.A, ¶ 1 and I, ¶ D.) The Settlement allocates the Total Settlement Fund as follows:

3

- $50,000 allocated to PAGA penalties, with $37,500 being paid to the California Labor & Workforce Development Agency and $12,500 remaining for pro rata distribution to the PAGA Aggrieved Employees (*id.* § III.B, ¶ 3);
- Up to $10,000 allocated to Plaintiff as an enhancement for serving as Class Representative (*id.* ¶ 1);
- Up to $6,500 allocated to settlement administration costs (*id.* ¶ 4);
- Up to one-third of the Total Settlement Fund allocated to attorneys' fees for class counsel (*id.* ¶ 2); and
- An amount approved by the Court for documented costs to class counsel (*id.* ¶ 2).

Based on the Settlement's allocation of $50,000 to PAGA penalties (the "PAGA Settlement Amount"), $12,500 of which would be allocated to PAGA Aggrieved Employees, the settlement administrator Phoenix Settlement Administrators ("Phoenix") calculates an average payment of $46.64 to each of the 268 PAGA Aggrieved Employees. (Updated Islas Decl. ¶ 15.)

The sum to be distributed to the Settlement Class ("Class Members Fund") is $250,000 less the aforementioned deductions for PAGA penalties, attorneys' fees and costs, settlement administration costs, and Plaintiff's service award. (*Id.* ¶ 13.) Phoenix calculates this amount to be $105,165.47.[1] (*Id.* ¶ 11.) Each member of the Settlement Class ("Class Member") will receive a share of the Class Members Fund which is proportional to the number of workweeks that the Class Member worked for YSL during the Class Period. (*Id.* ¶ 14.) Phoenix calculates an average payment of $773.28 for each of the 136 Class Members. (*Id.*)

---

[1] Phoenix calculates this amount by deducting a $10,000 service award from the Total Settlement Fund, but as discussed below, the Court awards a service award of $5,000. (*Id.* ¶ 13.) This calculation therefore does not reflect the final amount of the Class Members Fund. The Court expects the Post-Distribution Status Report, discussed below, to accurately reflect the final amount of the Class Members Fund.

4

### B. Notice

In its Preliminary Approval Order, the Court ordered the parties to file revised versions of their proposed Notice. (Prelim. Approval Order at 22.) The parties did so, and the Court approved the Notice. (Notice, Doc. 62; Order Approving Notice, Doc. 63.) The Notice includes information about the background of the lawsuit, Class Members' rights, including their rights to opt-out and object to the Settlement, the Settlement terms and amount, and the time and place of the final fairness hearing. (Notice.)

Phoenix was selected to give notice to the Settlement Class. (Updated Islas Decl. ¶ 2.) Phoenix obtained the last known mailing addresses from YSL for the 136 Class Members. (*Id.* ¶ 3.) Phoenix then conducted a National Change of Address Search to update the addresses, and mailed the Notice via first class mail to all Class Members on July 23, 2025. (*Id.* ¶¶ 4–5.) Seven Notices were returned, but Phoenix obtained seven updated addressed via skip tracing and re-mailed the Notices. (*Id.* ¶ 6.) As of October 30, 2025, Phoenix received no requests for exclusion, notices of objection, or workweek disputes. (*Id.* ¶¶ 7–10.) Class Members and PAGA Aggrieved Employees Matt Lopez and Aida Nasrinekou have submitted declarations in support of the Settlement. (Ex. A to Joint Decl., Doc. 71; Ex. B to Joint Decl., Doc. 71.)

Finally, the Court, in its Preliminary Approval Order, directed the parties to file a declaration reflecting that they provided appropriate notice of the Settlement to the relevant state and federal authorities per the terms of 28 U.S.C. § 1715(b) at least 90 days prior to the date of the final fairness hearing. (Prelim. Approval Order at 22.) Defense counsel has submitted a declaration indicating that she has done so. (Beckwith Decl. ¶ 3, Doc. 67-2.)

### C. Motions for Fees and Final Approval

On August 27, 2025, Plaintiff moved for attorneys' fees, costs, and a service payment. (Fees Mot.) Plaintiff requests a $10,000 service award. (*Id.* at 15.) Although class counsel originally indicated they would seek an attorneys' fees award of up to one-

third of the Total Settlement Fund, Plaintiff now requests a fee award of 25% of the Total Settlement Amount, or $62,500, for class counsel.  (*Id.* at 8.)  Plaintiff further requests an award of litigation costs of $15,834.53.  (*Id.* at 14.)  On September 26, 2025, Plaintiff moved for final approval of the class action and PAGA settlement, including an approval of $6,500 in costs of settlement administration to the Phoenix.  (Final Approval Mot.)

## II.  CLASS CERTIFICATION

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class under Rule 23(b)(3).  (See Prelim. Approval Order at 5–11.)  Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class.  The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the current Order.

## III.  FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.  Legal Standard

To preliminarily approve a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, "[t]o determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up). These factors overlap significantly with the factors codified in Rule 23(e), and so approval under the *Staton* factors is coextensive with approval under the Federal Rules.

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not [] the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quotation marks omitted). The Court must therefore look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

### B. Analysis

In its Preliminary Approval Order, the Court evaluated the fairness factors identified by the Ninth Circuit as relevant to a determination as to whether the class action settlement is fair, reasonable, and adequate under Rule 23. (*See* Prelim. Approval Order at 11–20.) The Court determined that the following factors weigh in favor of approval: (1) the strength of Plaintiff's case, (2) the risks of continuing litigation, (3) the risk of maintaining class action status through trial, (4) the amount offered in settlement, (5) the stage of proceedings and extent of discovery completed, (6) the experience and views of counsel, and (7) the lack of signs of collusion. (*Id.*) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis in the Preliminary Approval Order into the instant Order.

However, at the time of preliminary approval, Plaintiff had not yet provided evidence of Class Members' reactions to the Settlement. (*Id.* at 20); *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (stating that one of the factors informing a settlement's fairness is "the reaction of the Class Members to the proposed settlement"). The Court therefore ordered counsel to submit, before the final settlement hearing, "a sufficient number of declarations from Class Members discussing their reactions to the proposed Settlement." (Prelim. Approval Order at 20.) Counsel submit a joint declaration stating that neither Plaintiff's counsel nor Defendants' counsel received any objections to the class settlement, nor have counsel been contacted by Class Members, nor have any Class Members opted out. (Joint Decl. ¶¶ 3–4, Doc. 71.) An employee for Phoenix, the settlement administrator, further avers that Phoenix has received no requests for exclusion, notices of objection, or disputes. (Updated Islas Decl. ¶¶ 7–10.) Finally, counsel submit declarations of two Class Members in support of the Settlement. (Ex. A to Joint Decl.; Ex. B to Joint Decl.) The Court therefore finds that Class Members' positive reactions to the Settlement weigh in favor of approval.

The Court is satisfied that the class action settlement meets the Rule 23(e) requirements: the Class Representative and class counsel have adequately represented the Class, the proposal was negotiated at arm's length, the relief provided is adequate, and Class Members are treated equitably relative to each other. Similarly, having weighed the *Staton* factors and considered the Settlement as a whole, the Court finds that the proposed class action settlement is fair, reasonable, and adequate.

### IV.   FINAL APPROVAL OF THE PAGA SETTLEMENT

"Although there is no binding authority establishing the standard of review for PAGA settlements, California district courts have applied a Rule 23-like standard, asking whether the settlement of PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Sanchez v. Mohawk Indus., Inc.*, 2025 WL 2694749, at *25 (E.D. Cal. Sept. 20, 2025) (cleaned up). The Court has already

determined that (1) the strength of Plaintiff's case, (2) the risks of continuing litigation, (3) the stage of proceedings and extent of discovery completed, (4) the experience and views of counsel, and (5) the lack of signs of collusion weigh in favor of approval of the class action settlement, and finds that the factors further weigh in favor of approval of the PAGA settlement.

Additionally, the Court finds the proposed PAGA Settlement Amount to be reasonable. Plaintiff seeks final approval of a PAGA Settlement Amount of $50,000, of which $37,500 (75%) will be distributed to the California Labor and Workforce Development Agency ("LWDA") and the remaining $12,500 (25%) will be distributed pro rata to PAGA Aggrieved Employees based on their number of pay periods within those dates. (*See* Final Approval Mot. at 11; Updated Islas Decl. ¶ 15.) The PAGA Settlement Amount of $50,000 represents 6.5% of the estimated maximum value of the PAGA claims of $768,800 (Toney Decl. I ¶ 11), which is reasonable in light of other PAGA settlements. *See, e.g.*, *McLeod v. Bank of Am., N.A.*, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding a PAGA settlement amount of $50,000 to be reasonable where the maximum value of the PAGA claim was estimated at $4.7 million). Further, several PAGA Aggrieved Employees will receive additional payments as members of the Settlement Class. *See Haralson v. U.S. Aviation Services Corp.*, 383 F.Supp.3d 959, 972 (N.D. Cal. 2019) ("Where PAGA claims are settled in the same agreement with the underlying Labor Code claims, courts have also looked to the interplay of the two recoveries to determine whether PAGA's purposes have been served.").

Finally, Plaintiff's counsel submitted the Settlement to the LWDA on December 6, 2024, the same day as Plaintiff filed the motion for preliminary approval. (Third Robinson Decl. ¶ 3.) As of October 30, 2025, there have been no objections from the LWDA, further indicating that the Settlement is reasonable. (*Id.* ¶ 6); *Jordan v. NCI Grp., Inc.*, 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he Court finds it persuasive that the LWDA was permitted to file a response to the proposed settlement and no comment or

objection has been received."). The Court therefore concludes that the PAGA Settlement is fair, adequate, and reasonable.

## V.     ADMINISTRATION COSTS

Plaintiff submits with her motion for final approval the Declaration of Lluvia Islas, Case Manager for the parties' settlement administrator Phoenix. (Islas Decl., Doc. 67-3; Updated Islas Decl.) The Islas Declaration provides that the total cost for services in connection with the administration of the Settlement was $6,573.32, and offers line-by-line estimates for the tasks it completed. (Ex. B to Updated Islas Decl.) Plaintiff requests that the Court approve a payment of $6,500 to Phoenix. (Final Approval Mot. at 16.) As noted in its Preliminary Approval Order, the Court finds that $6,500 is reasonable (Prelim. Approval Order at 20), and GRANTS the request for $6,500 in administration costs.

## VI.    LITIGATION COSTS

Plaintiff asks the Court to approve reimbursement from the Total Settlement Fund for litigation costs and expenses in the amount of $15,834.53. (Fees Mot. at 14.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *9 (C.D. Cal. Dec. 5, 2019) (quoting *In re Omnivision*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008)). Class counsel provide an itemized list of expenses undertaken during the litigation, including filing fees, mediation costs, and retention of an expert. (First Robinson Decl. ¶ 7, Doc. 64-1; Ex. B to First Robinson Decl., Doc. 64-1.) The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS the request for reimbursement of litigation costs and expenses in the amount of $15,834.53.

## VII.   ATTORNEYS' FEES

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable,

10

even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained. *See id.* at 942. Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Here, class counsel seek fees in the amount of 25% of the Total Settlement Fund, or $62,500. (Fees Mot.) The Court notes that this amount is in line with the Ninth Circuit's benchmark and, in light of the analysis of the below factors, finds the requested fee amount to be reasonable.

### A. Results Achieved

The Total Settlement Fund is $250,000, which represents approximately 16.9% of YSL's maximum potential liability of $1,471,484.20, as calculated by class counsel. (Toney Decl. II ¶¶ 6–12.) Around $105,165.47 will go to Class Members and $12,500 will go to PAGA Aggrieved Employees. (Updated Islas Decl. ¶¶ 13, 15.) On average, each Class Member will receive approximately $773.28 and each PAGA Aggrieved Employee will receive $46.46. (*Id.*). Though the Court noted in its Preliminary Approval Order that

the Total Settlement Fund as compared to the total possible recovery is "low compared to recoveries obtained in other wage and hour class actions," it also noted that the amount was adequate given the risk of continued litigation. (Prelim. Approval Order at 16–17.) The Court finds that the Settlement amount indicates a degree of success that warrants the recovery of attorneys' fees at the Ninth Circuit's 25% benchmark. *See Sebastian*, 2019 WL 13037010, at *6 (finding the "results achieved" factor to weigh in favor of an award of 25% in attorneys' fees where the settlement represented 19% of potential liability). The lack of objections from Class Members or the LWDA further points to the strength of the Settlement. The Court therefore finds that this factor weighs in favor of finding the requested fee award reasonable.

### B. Risk of Litigation

The Court found in its Preliminary Approval Order that ongoing litigation would be risky. (Prelim. Approval Order at 13–14.) Plaintiff acknowledges that she may have faced issues which could be construed as individualized, and because YSL intended to vigorously oppose class certification, the Settlement mitigates substantial risk that Plaintiff would not secure relief for Class Members. (*Id.* at 13–14.) This factor therefore weighs in favor of awarding the requested fee amount. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (cleaned up).

### C. Skill Required and Quality of Work

In its Preliminary Approval Order, the Court noted that class counsel Michael Robinson and Orion Robinson have each handled over fifteen class and PAGA claims, but indicated that the Court "expect[ed] to see a greater description of their experience in any motion for final approval or attorneys' fees." (Prelim. Approval Order at 9.) With their motion for attorneys' fees, class counsel submit a declaration stating that Michael and Orion Robinson possess over thirty years and twelve years of experience, respectively.

(First Robinson Decl. ¶ 5.) The declaration further states that Michael and Orion Robinson have each handled over forty class and PAGA claims. (*Id.*) The Court is satisfied that class counsel have provided sufficient evidence of their experience to justify an award at the Ninth Circuit's 25% benchmark. Counsel also detail the effort they expended during this litigation in interviewing YSL employees, analyzing time and payroll records, meeting with the class expert, serving discovery, and participating in mediation. (*Id.* ¶ 4.) This factor therefore weighs in favor of finding the requested fee reasonable.

### D. Contingent Nature of the Fee

Class counsel performed their work on a fully contingent basis and have collectively invested 585.7 hours on this case. (*Id.* ¶ 7.) Counsel therefore devoted significant time and expenses to this action, without any guarantee of compensation for their work. "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). This factor weighs in favor of finding the requested fee award reasonable.

### E. Lodestar Calculation

Class counsel assert they have spent 585.7 hours litigating this action. (First Robinson Decl. ¶ 7.) Using hourly rates ranging from $350 to $650, class counsel calculate a lodestar of $287,940. (*See id.* ¶ 8; Ex. A to First Robinson Decl.) Thus, because class counsel seek an award of $62,500, the amount Plaintiffs' counsel will receive reflects a negative multiplier of 0.21. The negative multiplier indicates that the requested fee award is reasonable.

### F. Conclusion as to Attorneys' Fees Award

As the Court's analysis above explains, the *Vizcaino* factors and the lodestar cross-check indicate that an award in line with the Ninth Circuit's 25% benchmark is warranted.

13

Accordingly, the Court GRANTS class counsel's request for attorneys' fees and awards 25% of the Total Settlement Fund: $62,500. However, as discussed below, ten percent (10%) of the awarded attorneys' fees will be withheld pending further order of the Court following submission of a Post-Distribution Status Report.

### VIII. SERVICE AWARD

Plaintiff seeks an incentive payment of $10,000. (Fees Mem. at 16.) Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "To [further] assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977). Courts "must 'evaluate [such] awards individually to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'" *Id.* (quoting *Staton*, 327 F.3d at 975, 977).

Here, Plaintiff attests that she spent more than 50 hours on tasks to prosecute this case, including gathering documents, meeting with class counsel, and reaching out to more than 15 employees. (Sabzerou Decl. ¶ 2, Doc. 64-2.) Plaintiff also acknowledges her awareness of the potential risk to her reputation in bringing this class action, as she still works in the fashion industry. (*Id.* ¶ 3.) Her actions have resulted in a settlement that will provide monetary relief to Class Members and PAGA Aggrieved Employees. Therefore, the Court finds it reasonable to grant approval of an incentive award under these circumstances.

However, the Court concludes that Plaintiff's requested incentive award is too large. "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v.*

*GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008); *see also Free Range Content v. Google*, 2019 WL 1299504, at *11 (N.D. Cal. Mar. 21, 2019) ("$5,000 service awards are presumptively reasonable."). The Court recognizes Plaintiff's efforts to obtain relief for the Class; however, she has not demonstrated circumstances to warrant an exceptional award, as she did not undertake inordinate or atypical monetary or reputational risk. Moreover, $5,000 is already many times the average award of $773.28 that Class Members will receive, and a greater award would exacerbate that disparity. The cases to which Plaintiff cites are distinguishable, as the named plaintiffs in those cases expended considerably greater effort than Plaintiff did here. *See Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (plaintiff invested more than 165 hours in the case, including participating in discovery and day-long settlement negotiations); *see also Martin v. AmeriPride Servs., Inc.*, 2011 WL 2313604, at *9 (S.D. Cal. June 9, 2011) (plaintiffs responded to written discovery requests, prepared initial disclosures, participated in depositions, and traveled to attend full day mediation).

Upon weighing the services rendered, the financial and reputational risk undertaken, and the proportion of the overall Total Settlement Fund, the Court finds an enhancement award of $5,000 reasonable under the circumstances.

### IX.   POST-DISTRIBUTION STATUS REPORT

Class counsel shall file a Post-Distribution Status Report within twenty-one (21) days after the substantial completion of distribution of the Settlement to Class Members and PAGA recipients, and payment of the service award to the Class Representative. The status report shall include information on when distributions were made to Class Members and PAGA Aggrieved Employees, the number of Class Members and PAGA Aggrieved Employees who were sent payments, the total funds distributed, the average and median distribution to Settlement Class Members and PAGA Aggrieved Employees, the largest and smallest distribution to Class Members and PAGA Aggrieved Employees, the final number and value of cashed and uncashed checks, the number and value of attempted

distributions to Class Members and PAGA Aggrieved Employees, general information about efforts made to contact Class Members and PAGA Aggrieved Employees regarding attempted distributions, any significant or recurring concerns communicated by Class Members since final approval, the administrative costs, and any other material facts about Settlement distribution.

Class counsel is referred to the Post-Distribution Accounting Form attached in PDF format to the "Orders and Additional Documents" tab of the Court's Procedures Page. Class counsel shall fill out two Post-Distribution Accounting Forms—one for the distribution of funds to Class Members, and another for the distribution of funds to PAGA Aggrieved Employees—and submit the Forms with the Post-Distribution Status Report. The Court will withhold 10% of the attorneys' fees granted in this Order until the Post-Distribution Status Report has been filed. Class counsel shall file a proposed order for release of the remainder of the fees when they file their Post-Distribution Status Report.

## X.     CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable, and accordingly GRANTS final approval of the class action and PAGA settlement. The Court GRANTS IN PART approval of the requested attorneys' fees, costs, and service payment. The Court awards class counsel $62,500 in attorneys' fees and $15,834.53 in costs. Ten percent (10%) of such fees awarded shall be withheld pending class counsel's submission of a Post-Distribution Status Report within **twenty-one (21) days** after the substantial completion of distribution to Class Members and PAGA Aggrieved Employees. Class counsel shall submit a proposed order for a final distribution of attorneys' fees with its Post-Distribution Status Report. The Court also awards to Plaintiff a service payment of $5,000. Finally, the Court awards $6,500 in administration expenses to Phoenix.

Class counsel is ORDERED to file a proposed final judgment within **five (5) days** of entry of this Order.

16

DATED:  November 04, 2025

## JOSEPHINE L. STATON
HON. JOSEPHINE L. STATON  
UNITED STATES DISTRICT JUDGE
